## MUTTER v. I. X. L. LIME CO.

### No. 15,891; December 20, 1895.

#### 42 Pac. 1068.

**Evidence—Rebuttal.**—Where the Defense in an Action for Cutting Wood was that plaintiff agreed to pile it for measurement, but failed to do so, and defendant's foreman testified that the wood was not in condition to be measured, it was error to permit a witness called in rebuttal to testify that he had a conversation with said foreman after the suit had commenced, and that said foreman told the witness that the wood could be easily measured, as, if said testimony was intended to impeach said foreman's testimony, it was improper, because no foundation had been laid.

**Evidence—Declaration of Agent.**—If Intended to Prove that the wood was in condition to be measured, it was improper, because the declaration of an agent under such circumstances cannot bind his principal.

APPEAL from Superior Court, Santa Cruz County; J. H. Logan, Judge.

Action by Clement Mutter against the I. X. L. Lime Company, a corporation, to recover for work and labor performed. Plaintiff had judgment and defendant appeals. Reversed.

Lucas F. Smith and Chas. B. Younger for appellant; Z. N. Goldsby for respondent.

BELCHER, C.—Plaintiff brought this action to recover from the defendant the sum of $1,599, with interest thereon from June 1, 1892. The complaint contains three counts. In the first count it is alleged that the defendant is indebted to the plaintiff in the sum of $434 for cutting, at its special instance and request, two hundred and fifty cords of pine wood at one dollar per cord, and two hundred and thirty cords of redwood at eighty cents per cord. In the second count it is alleged that the defendant is indebted to the plaintiff in the sum of $1,165, balance due for cutting and delivering, at its special instance and request, twelve hundred and four and three-fourths cords of wood at $2.15 per cord, and for cutting twenty-two and one-half cords of heading bolts at one dollar and ten cents per cord, and that the cutting and

delivering of said wood and the cutting of said bolts were reasonably worth the prices named. The third count is the same as the second, except that it alleges that defendant promised and agreed to pay plaintiff, at the rates aforesaid, upon the first day of each and every month, for all wood cut and delivered and all bolts cut by plaintiff during the previous month. The answer denies most of the averments of the complaint, and alleges that, before the commencement of the action, defendant had paid plaintiff the sum of $1,449.96, in full satisfaction of all wood cut and delivered by him to it. The case was tried by the court without a jury, and the findings were that the defendant was indebted to the plaintiff, upon the causes of action set up, in the sum of $1,456.99, for which sum and costs judgment was entered. The defendant moved for a new trial, which was denied, and has appealed from the order.

It is claimed for appellant that several errors were committed by the court in its rulings upon the admission of evidence, and that the findings were not justified by the evidence, and hence that the order should be reversed. It is not necessary to notice all of the rulings complained of, as most of them were, in our opinion, correct, but one of them, we think, was clearly erroneous. The plaintiff was a witness in his own behalf, and testified: That he made an agreement with Mr. Blum, the superintendent of the defendant company, to do the work for which he sought to recover under the first count of his complaint, and that in pursuance of the agreement he commenced cutting the wood in November, 1891, and finished the cutting in March, 1892. That he could not tell exactly how much wood he cut, but it was about four hundred cords. That "Mr. Blum agreed to measure the four hundred cords in January, and he didn't come. The four hundred cords were to be paid for as soon as it was put up in the woods where I cut it. He agreed to pay when it was done, and he didn't come up to measure it. . . . . By March 4th it was all cut. It was to be all paid for by the 4th of March. . . . . Mr. Blum said he would come in January, and pay for what they had cut, but he didn't come, but come in March, and he didn't measure, or do nothing. . . . . It was agreed between Mr. Blum and myself that, when the wood was cut and put up, it should be measured and paid for. . . . . This four hundred cord lot of wood was in a condition last spring—April, May,

and along at that time—to be measured, so as to ascertain the amount there was there." Joseph Krater was also a witness for plaintiff, and testified that he was present when Mutter agreed with Blum to cut that wood. "Blum promised to measure it in January, and pay for it then. Mutter finished cutting that lot of wood in the month of March, 1892. I do not know how much there was of that wood. The four hundred cords were to be measured on the ground where it was chopped." I. Blum was a witness for defendant, and testified that he was the superintendent of the defendant company, and that he made a contract with the plaintiff for the so-called four hundred cord lot of wood mentioned in the plaintiff's first cause of action. "The agreement was that Mutter was to cut this wood, and pile it properly for measurement. He was to notify the company when it was ready for measurement. The four hundred cord lot had not been measured or hauled to the lime-kiln up to the seventeenth day of June, 1892 [the day when the complaint was filed]. Plaintiff did not notify the defendant that the wood was ready for measurement. . . . . There was no specified number of cords mentioned to be cut. I told him the place where to cut the wood. I was to pay him one dollar for pine, and eighty cents for redwood. He was to cut all the wood in that locality, and pile it in merchantable order, so it could be measured. The time of payment was after the wood was measured and hauled in, then the amount hauled was to be paid for the succeeding month on the company's regular pay day. It was agreed that, when we wanted the wood, we would measure it and haul it, and then pay for it the succeeding month, at the company's regular pay day. We were to make arrangements to haul the wood as soon as it was measured and as soon as it could be hauled. We were not to haul anything except what was measured up to that time. The company's pay day was on the fifteenth of each month." M. Hickey was a witness for defendant, and testified that he was foreman of the defendant company, and that he "heard Mutter state what his contract with Blum was in reference to the four hundred cord lot; he told me he was to put up four hundred cords of wood—so much pine, so much redwood—and after he got it out the company was to measure it, and it was to be paid for when it was delivered at the kilns. I went up there and looked at the wood, and it was not piled so it could be measured. This was

in April, 1892. It was piled in all kinds of shapes. I could not explain it, really, but it was crossways and lengthways. It was not compact. It was piled too loosely. Some of it was not piled at all. I could not measure it. About the 31st of August, 1892, I went with Cerf, Mutter and Spellman to measure this wood. At that time it was in a little better condition, because they had repiled some of it, and Mutter agreed to take our measurement, which he had refused to do before that time. I have reference to what you call the four hundred cord lot. I saw this lot of wood in April, 1892. It could not then be measured. No man living could measure it accurately. Up to the bringing of this suit, the wood was in such condition that it could not be measured accurately. The plaintiff never demanded of the defendant payment for this four hundred cords of wood, or any part thereof, up to the bringing of this suit. It had not been measured or hauled at that time. The plaintiff told me that it was to be paid for when it was measured and hauled to the lime-kilns.''

George Ley was called by plaintiff as a witness in rebuttal, and stated: ''I had a conversation with Hickey about the four hundred cords. He was the foreman of the lime company.'' He was then asked, ''What did he tell you?'' The question was objected to on the ground that it was incompetent, immaterial, irrelevant, not in rebuttal, and hearsay. The objection was overruled, and an exception reserved. The witness answered: ''He was talking about the four hundred cord lot. He said that wood could be measured easy enough, if they only wanted to measure it; that he had measured lots of worse wood than that was—worse put up than that was.'' The witness further said that this statement was made to him since the suit was brought, and that no one but Hickey and himself was present. The objection to the question should have been sustained. Whether the wood was in condition to be measured before the suit was brought was a material issue in the case, and was sharply contested; there being evidence upon the question, other than that above referred to, introduced upon both sides. If the purpose of the evidence sought to be elicited was to impeach the witness Hickey, it was clearly inadmissible, because the proper foundation for it had not been laid: Code Civ. Proc., sec. 2052. And if the purpose was to prove that the wood was in fact in condition to be measured, and should have been measured, before the suit was brought, it was in-

admissible, because the declarations of an agent do not bind the principal unless they are made during the continuance of the agency, and are a part of the res gestae. To be admissible, they must be in the nature of original, and not of hearsay, evidence; and must be made, not only during the continuance of the agency, but in regard to a transaction depending at the very time: Clunie v. Lumber Co., 67 Cal. 313, 7 Pac. 708; Beasley v. Packing Co., 92 Cal. 388, 28 Pac. 485; Birch v. Hale, 99 Cal. 299, 33 Pac. 1088. For the error noted, the order should be reversed and the cause remanded for a new trial.

We concur: Searls, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order is reversed and the cause remanded for a new trial.